Reece **BOLEN**, Administrator of the Estate of Alonzo Coburn, Appellant,

v.

Ollie **HOWARD**, Committee for Lee Howard, etc., et al., Appellees.

Court of Appeals of Kentucky.

March 27, 1970.

Cordell H. Martin, Hindman, D. G. Boleyn, Hazard, for appellant.

Dan T. Martin, Hindman, for appellees.

PALMORE, Judge.

The appellant, Reece Bolen, Administrator of the estate of Alonzo Coburn, deceased, brought this action against the appellee, Ollie Howard, Committee for Lee Howard, an incompetent, seeking compensatory damages for the death of Coburn, who had been shot and killed by Lee Howard. Judgment was entered in accordance with a verdict for the defendant.

Appellant contends he was entitled to a directed verdict on the question of liability and that the trial court erred in giving a contributory negligence instruction. Appellee's principal response to these claims of error seems to be that the defense should have had a directed verdict because there was insufficient proof of the decedent's earning power to support a recovery in the first place.

The complaint alleges that in January of 1967 Lee Howard "carelessly, negligently, wantonly, maliciously, and not in self-defense" shot and killed Coburn with a shotgun. Whether it was intended to state a cause of action under KRS 411.130 or 411.-150 is not clear, but no point of it is made on the appeal, and it may not be material anyway. See Howard's Adm'r v. Hunter, 126 Ky. 685, 31 K.L.R. 1092, 104 S.W. 723 (1907). It is alleged and admitted that at the time of the tragedy Lee Howard was an incompetent whose care, custody and control had been committed by the Veterans' Administration to his brother, the defendant Ollie Howard, serving as committee under appointment of the Knott County Court.

Coburn was a brother of Ollie Howard's wife and had been living in the Howard home for about two years, though he had a wife and children in West Virginia. He was 62 years old and had lost an arm. He drew welfare money of some kind and was not gainfully employed. We do not know Lee's age, but he had been in his brother's custody for 16 years. Neither do we know the details of Lee's mental condition except that he was nervous and easily upset. There was no evidence that he had ever before evinced a disposition to violence.

Lee and the decedent, Coburn, were on good terms and often hunted together. On the occasion in question they and another boarder in the Howard home by the name of Bill Davis were discussing the prospects of going hunting the next day in a certain area of the vicinage. In order to tease Lee, Coburn and Davis told him they were going to take him along but they were not going to let him have a gun. Lee demurred, and said he was not going, because he had hunted in this area when he was younger and there were wild hogs in there. But Coburn and Davis continued in the same

vein of conversation until Lee got tired of it and said, "You all better leave me alone." At this point Coburn and Davis desisted, and Coburn retired to his bedroom upstairs. Shortly thereafter Lee went into a back room where a shotgun was kept, took it upstairs and shot Coburn while he was lying in bed reading. The shotgun shell used in the killing was from a box of ammunition Coburn had procured for hunting purposes.

In substance, instruction No. 1 directed the jury to find for the plaintiff if Lee Howard wrongfully and not in self-defense shot and killed Coburn. Instruction No. 2 was to the effect that if Coburn "was contributorily negligent in connection with any threats toward defendant [sic] or he was negligent in making access to the gun or shells, and as a result of said negligence the defendant [sic] shot and killed deceased, then you will find for the defendant."

The liability of an insane person for his torts has been defined as follows: "An insane person is liable civilly for his torts to the same extent as a sane person, except that punitive damages may not be allowed; and such persons are not liable for torts in which the gravamen of the action is malice, such as slander, libel, and malicious prosecution." Phillips' Committee v. Ward's Adm'r, 241 Ky. 25, 43 S.W.2d 331, 334 (1931). See also Young v. Young, 141 Ky. 76, 132 S.W. 155 (1910).

Though we gravely doubt the wisdom and justice of this anachronistic approach [see Prosser on Torts § 129 (3d ed. 1964)], since the litigating parties do not question it we shall not undertake to re-examine it at this time.

■ The evidence established beyond cavil that Lee Howard shot and killed Coburn without legal justification. Without going so far as to say that there can be no case in which recovery would be barred by the victim's own conduct in precipitating the injurious incident, we hold simply that this is not such a case. The two men were on good terms. They had hunted together without untoward incident, leaving no reason to believe that Lee could not be trusted within reach of firearms. There was no indication that he had ever manifested a tendency to do violence, even to the very moment of the fatal shooting. Once it appeared that he was irritated Coburn and Davis ceased their bantering. Clearly, we think, the evidence was not sufficient to support a finding that the tragic consequence was reasonably foreseeable.

■ Despite Coburn's age and non-work status at the time of his death, together with ample defensive testimony that he was not in physical condition to earn a livelihood, there was proof that he had worked in West Virginia shortly before he came to live with the Howards in Kentucky and could have resumed the same work. It will be recalled also that he was able to go hunting, which reflects some degree of physical stamina. He was able to drive a motor vehicle. His earning power may have been minimal, but at the very least his estate is entitled to nominal recovery. Certainly it would not have been proper to direct a verdict for the defendant.

Our conclusion is that under the law as it stands in this case the appellant was entitled to a directed verdict on the issue of liability and that the question of damages should be submitted to a jury.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

All concur except for EDWARD P. HILL, Jr., C. J., who dissents.