662 P.2d 534

Richard **RAJSPIC** and Grace M. **Rajspic,**
husband and wife,
**Plaintiffs-Respondents,**

v.

**NATIONWIDE MUTUAL INSURANCE
COMPANY, Defendant-Appellant.**

No. 13883.

Supreme Court of Idaho.

March 9, 1983.

Rehearing Denied May 10, 1983.

John W. Barrett, Moffatt, Thomas, Barrett & Blanton, Boise, for defendant-appellant.

David A. Frazier, Coeur d'Alene, for plaintiffs-respondents.

DONALDSON, Chief Justice.

On November 27, 1973, William Brownson was shot during an altercation with the plaintiff-respondent Grace M. Rajspic. In a subsequent criminal action against Mrs. Rajspic she was acquitted of assault with a deadly weapon upon the ground of mental disease or defect excluding responsibility. Later a civil suit for assault and battery was brought by Brownson against the Rajspics to recover damages including punitive damages. The Rajspics had an insurance policy with the defendant-appellant, Nationwide, and were defended by counsel employed by Nationwide and their own attorney. During that proceeding, a stipulation was entered into by counsel for the parties that Grace M. Rajspic was, in the definition of the law, insane at the time of the shooting. The trial judge in that action instructed the jury that this stipulation re-

moved the issue of punitive damages from the case. A judgment was rendered against the Rajspics in favor of Brownson. The Rajspics were informed by Nationwide that their insurance policy did not cover this judgment, as it fell within a provision excluding liability for intentional torts.

The Rajspics brought suit against Nationwide alleging the exclusionary provision was improperly invoked. Nationwide filed a motion in limine to exclude evidence or testimony of the stipulation in the prior proceedings on the basis that it had not been a party and thus had no opportunity to litigate the issue presented. This motion was denied and Rajspic's motion for partial summary judgment was granted. Collateral estoppel was applied with respect to the issue of Grace M. Rajspic's sanity and the district court granted judgment for the Rajspics on the issue of liability. Nationwide appeals.

### I.

■ Before we determine whether Nationwide is collaterally estopped from litigating the issue of Mrs. Rajspic's sanity, it is necessary that we consider an issue of law inextricably interwoven with that issue. Is a person who is characterized as insane under the law of Idaho capable of forming the intent necessary to commit an intentional tort such as battery or phrased in terms of this case, can the acts of such a person as a matter of law be considered within the intentional acts exclusion of the insurance policy at issue. We believe that it is possible for insane persons to commit intentional acts. Whether Mrs. Rajspic's conduct came within the exclusion policy presents an issue of fact.

■ Idaho, until recently, had a statute, 1972 Idaho Sess. Laws, ch. 336, § 1, p. 844, which provided that mental illness could be a defense to criminal conduct:

"A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect *he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the require-*

*ments of law."* *Id.* at 850 (emphasis added).

Idaho has no statute which provides that a person suffering from mental disease or defect is not liable for intentional torts. Even if the stipulation in the earlier civil case were to estop Nationwide in this case, summary judgment on this record would as a matter of law be error because the capacity of a person with a mental disease or defect to commit an intentional act is a question of fact not capable of resolution at the pretrial summary judgment phase.

"A lunatic may be capable of having an intent to bring about a specific result, even though the intent is induced by a delusion; and in that respect his acts are to be distinguished from those of an epileptic or a person seized with temporary unconsciousness, which are regarded as involuntary and accidental. If tort liability without fault is to be imposed upon sane persons who make reasonable mistakes, a *lunatic* who acts under a perpetual mistake, unreasonable in the eyes of the community, *may very well be held liable for his intentional torts.* It has been recognized, however, that his insanity may be such that he is incapable of entertaining the specific intent necessary for a particular tort ...." Prosser, Handbook of the Law of Torts, § 135, at 1001 (4th ed. 1971) (footnotes omitted and emphasis added).

Authorities may be found which support the liability of an insane person for his torts. *Mullen v. Bruce,* 168 Cal.App.2d 494, 335 P.2d 945 (Cal.Dist.Ct.App.1959) (factual question whether patient had sufficient capacity to intend violent conduct essential to the commission of the battery); *Bolen v. Howard,* 452 S.W.2d 401 (Ky.1970); *McGuire v. Almy,* 297 Mass. 323, 8 N.E.2d 760 (Mass.1937); *Van Vooren v. Cook,* 273 App.Div. 88, 75 N.Y.S.2d 362 (N.Y.App.Div. 1947); *Kusah v. McCorkle,* 100 Wash. 318, 170 P. 1023 (Wash.1918).

In *McGuire v. Almy, supra,* an insane woman was held liable for assault and battery. The *McGuire* court stated that:

"Turning to authorities elsewhere, we find that courts in this country almost invariably say in the broadest terms that an insane person is liable for his torts. As a rule no distinction is made between those torts which would ordinarily be classed as intentional and those which would ordinarily be classed as negligent, nor do the courts discuss the effect of different kinds of insanity or of varying degrees of capacity as bearing upon the ability of the defendant to understand the particular act in question or to make a reasoned decision with respect to it, although it is sometimes said that an insane person is not liable for torts requiring malice of which he is incapable." *Id.* at 762.

Later the *McGuire* court stated that:

"[W]here an insane person by his act does intentional damage to the person or property of another he is liable for that damage in the same circumstances in which a normal person would be liable. This means that *in so far as a particular intent would be necessary in order to render a normal person liable, the insane person, in order to be liable, must have been capable of entertaining that same intent and must have entertained it in fact.* But the law will not inquire further into his peculiar mental condition with a view to excusing him if it should appear that delusion or other consequence of his affliction has caused him to entertain that intent or that a normal person would not have entertained it." *Id.* at 763 (emphasis added).

In part the *McGuire* decision was based upon the earlier Massachusetts case, *Dean v. American Mutual Life Insurance Co.,* 86 Mass. (4 Allen) 96 (1862) (suicide committed by insane person who understood the nature of his act and intended to so act voids a life insurance policy which provides for exclusion if the assured shall die by his own hand). The *Dean* case concerned a claim for insurance benefits following the death of the insured. We agree with the following statement by the *Dean* court:

"A person may be insane, entirely incapable of distinguishing between right and wrong, and without any just sense of moral responsibility, and yet retain sufficient powers of mind and reason to act with premeditation, to understand and contemplate the nature and consequences of his own conduct, and to intend the result which his acts are calculated to produce." *Id.* at 100.

The act of self-destruction by the insured in the *Dean* case resulted in no insurance coverage.

Similarly, in the present case insanity under the law would not be dispositive of whether the act committed by Mrs. Rajspic was an intentional act and therefore within the embrace of the intentional act exclusion. On the record when examined in a light most favorable to the opposing party, it presents a question of fact.

## II.

The central issue in the case below involves whether the conduct of Mrs. Rajspic is characterized as an intentional act and therefore within the ambit of the exclusion provision of the insurance policy. Relevant to the determination of this issue is the mental capacity of Mrs. Rajspic. The trial court foreclosed any opportunity to litigate that condition by granting summary judgment on the issue of liability in favor of the Rajspics.[1]

---

1. The trial court referred in its order granting the plaintiffs' motion for partial summary judgment to its earlier order denying defendant's motion for summary judgment and quoted from the former order the following language:

"The Court finds that there is no material disputed issue of fact concerning Grace Rajspic's mental condition, and at the time she shot Brownson she was suffering from a mental disease or defect which substantially imparied [sic] her capacity to appreciate the wrongfulness of her conduct or to conform her conduct to the requirement of law and which excluded responsibility for her actions. Under these circumstances it would be the conclusion of the Court that because of her mental disease or defect, Grace Rajspic did not have the mental capacity to commit an intentional act, and thus, the Defendant is not relieved of it's [sic] obligation under the

The issue presented on appeal is whether the trial court committed reversible error in applying the doctrine of collateral estoppel to deny the defendant-appellant Nationwide the opportunity to litigate the issue of Grace M. Rajspic's sanity. From our examination of the law and the record, we conclude that the trial court erred and that Nationwide was erroneously denied an opportunity to litigate the insurance coverage issue.

 In reviewing a grant of a motion for summary judgment, this Court liberally construes the record in a light most favorable to the party opposing the motion. *E.g., Taylor v. Choules,* 102 Idaho 222, 224, 628 P.2d 1056, 1058 (1981); *Pocatello Industrial Park Co. v. Steel West, Inc.,* 101 Idaho 783, 621 P.2d 399 (1980); *Farm Bureau Finance Co., Inc. v. Carney,* 100 Idaho 745, 605 P.2d 509 (1980).

Collateral estoppel precludes the relitigation of particular issues which were necessarily or actually decided by a previous decision of a different cause of action. *See Pocatello Industrial Park Co. v. Steel West, Inc.,* 101 Idaho 783, 621 P.2d 399 (1980); *Idaho State University v. Mitchell,* 97 Idaho 724, 552 P.2d 776 (1976); *Investment Service Co. v. Roper,* 588 F.2d 764 (9th Cir. 1978).

In the former civil case *Brownson v. Rajspic,* the issue of Grace Rajspic's sanity was removed from the case by stipulation of the parties. We are hesitant to hold in such circumstances that an issue resolved by stipulation has been litigated or determined for purposes of collateral estoppel. *See Anderson, Clayton & Co. v. United States,* 562 F.2d 972 (5th Cir.1977), *cert.*

*denied,* 436 U.S. 944, 98 S.Ct. 2845, 56 L.Ed.2d 785 (1978); 1B J. Moore & T. Currier, Moore's Federal Practice ¶ 0.444[4] (2d ed. 1982). Respondents argue that the stipulation was entered into by Nationwide's counsel and therefore should be binding upon Nationwide in this case. The appellant counters by persuasively arguing that it has not had a full, fair opportunity to litigate the issue. Nationwide employed an attorney who participated along with Rajspics' own attorney in defending the suit by Brownson. It is apparent to us that the respective interests of the Rajspics and Nationwide diverge on the issue of Mrs. Rajspic's sanity. The stipulation of insanity was in the best interest of the Rajspics and counter to Nationwide's interest which would have been best served by a finding of sanity. We decline to approve the application of the doctrine of collateral estoppel in this case.

In our opinion, there exists a genuine issue of material fact with respect to the sanity of Mrs. Rajspic. Such issue is particularly relevant to the issue of insurance coverage. The appellant's motion in limine to preclude the plaintiff from introducing evidence or testimony of the stipulation should have been granted.

Reversed and remanded.

SHEPARD, BAKES, and HUNTLEY, JJ., and SCOGGIN, J., pro tem, concur.

---

policy, and under the 'intentional exclusion clause'."

The trial court applied the doctrine of judicial (collateral) estoppel to preclude litigation of the issue of Grace Rajspic's sanity. The trial court stated:

"It appears to the Court that the doctrine of judicial estoppel applies here on the issue of the insanity of Grace Rajspic. That issue has been determined previously by (1.) the Judgment of the Court entered in Benewah Case No. 2247, State of Idaho v. Grace Rajspic, wherein Grace Rajspic was acquitted of the crime of assault with a deadly weapon with intent to murder Brownson on the ground of mental disease or defect excluding responsibility; (2.) during the trial of the civil action of Brownson v. Rajspic the parties stipulated to and the Court proceeded with that case upon such stipulation, that at the time of the shooting Grace Rajspic was insane; and (3.) the prior finding of this Court in ruling on Defendant's Motion for Summary Judgment, which Summary Judgment was filed December 8th, 1978."