695 P.2d 428

Larry MAXSON, Plaintiff-Appellant,

v.

FARMERS INSURANCE OF IDAHO, INC., Defendant-Third Party Plaintiff-Respondent,

and

Rocky Sligar, an individual, Third Party Defendant.

No. 14888.

Court of Appeals of Idaho.

Jan. 30, 1985.

Jeffrey E. Rolig, Hepworth, Nungester & Felton, Twin Falls, for plaintiff-appellant.

G. Kent Taylor, Taylor, Beito, Sinclair & Covington, Twin Falls, for defendant-third party plaintiff-respondent.

BURNETT, Judge.

This case began with a punch in the face. We are asked to decide whether the resulting personal injury was covered by an insurance policy. The district court held that the injury was the product of an intentional tort and, therefore, was excluded from coverage. The court further held that the insurance company was not required to defend its insured against the claim. We affirm.

The punch was delivered in a barroom by one Rocky Sligar. The recipient, Larry Maxson, suffered a broken jaw. In a deposition Sligar testified that Maxson had "flagged [him] a bird" on the street sometime before the encounter in the barroom. Sligar further testified that when he later saw Maxson sitting in the bar, he walked over and Maxson offered him a seat. Sli-

gar declined. An argument developed and Sligar invited Maxson outside to resolve their differences. According to Sligar, Maxson responded that if they went outside, he would get a gun from a pickup truck and shoot Sligar. While Maxson was still seated in his chair, Sligar struck him. Sligar later contended that he had acted in self-defense.

Maxson sued. Sligar notified Farmers Insurance Company of Maxson's claim. Farmers had issued a general liability policy to Sligar's father, and Sligar was one of the insureds. The policy obligated the company to "pay all damages which the insured becomes legally obligated to pay because of bodily injury to any person ... caused by an occurrence to which [the] insurance applies." The policy also provided that the company would "defend, at its own expense, any suit against the insured seeking damages on account of such bodily injury...." However, the scope of coverage was narrowed by an exclusion for "bodily injury or property damage caused willfully, intentionally or maliciously by or at the direction of the insured...." The insurance company filed a declaratory judgment action against Sligar's father, the principal insured, and obtained a declaration that Maxson's claim was not covered by the policy.[1] Thereafter, the company refused to defend Maxson's claim.

Maxson and Sligar eventually settled. Sligar consented to judgment against him for $25,000 and assigned to Maxson any cause of action he might have against the insurance company. In return, Maxson gave Sligar a covenant not to execute. Armed with the judgment and the assignment, Maxson then filed this suit against the company. The district court entered summary judgment in favor of the company on both the question of coverage and the question of duty to defend. We will address these questions in turn.

## I

In *Farmers Insurance Group v. Sessions*, 100 Idaho 914, 918, 607 P.2d 422, 426 (1980), our Supreme Court held that the intentional tort exclusion in a liability insurance policy is invoked if the "insured acted (whether willfully, intentionally or maliciously) for the purpose of causing injury...." Here, the district court held that Sligar's conduct was "willful and intentional," but the court did not make a specific determination that Sligar had acted "for the purpose of causing injury." Upon this omission Maxson now argues that the summary judgment was defective and that it must be set aside because a genuine issue exists as to Sligar's purpose in striking him. We disagree.

An appellate court independently may determine whether a genuine issue exists as to a material fact. *See Bob Daniels and Sons v. Weaver*, 106 Idaho 535, 681 P.2d 1010 (Ct.App.1984). Where the evidentiary facts are undisputed, and where only one reasonable inference can be drawn from those facts, the court may draw the inference even though it is adverse to the party against whom summary judgment is entered.[2] *Christensen v. Idaho Land Developers, Inc.*, 104 Idaho 458, 660 P.2d 70 (Ct.App.1983). Here, it is undisputed that Sligar intentionally punched Maxson in the face. Sligar acknowledged in his deposition that striking a person with his fist would inflict injury. In our view, the only reasonable inference is that Sligar's purpose in throwing the punch was to cause injury.

*Riverside Development Co. v. Ritchie*, 103 Idaho 515, 650 P.2d 657 (1982). Those criteria are satisfied in the present case. However, we have held that when a district court exercises the *Ritchie* power it must enter a written finding of the inference drawn. *Argyle v. Slemaker*, 107 Idaho 668, 691 P.2d 1283 (Ct.App.1984). Because the district court did not do so in this case, we do not rest our decision upon *Ritchie*.

1. The district court ruled that the declaratory judgment had no res judicata effect upon the instant case. The correctness of that ruling has not been placed at issue in this appeal and we will not address it *sua sponte.*

2. The district court also possesses a broader power to choose among competing inferences where the underlying evidentiary facts are undisputed and no jury trial has been requested.

Maxson, who now stands in Sligar's shoes vis-a-vis the insurance company, argues that Sligar intended not so much to cause injury as to defend himself against a perceived threat and that Sligar simply misjudged the situation. Such misjudgment, Maxson contends, is an act of negligence falling outside the insurance policy's exclusion of intentional torts. We find this argument unpersuasive. It is uncontroverted that Sligar initiated the barroom confrontation. When Sligar threw the punch, Maxson was unarmed and seated in a chair. He had threatened no harm to Sligar in the bar; his only threat, according to Sligar, was to get a gun and use it if they went outside as Sligar had suggested.

■ This is not a case where a party, while physically defending himself, has exceeded the reasonable bounds of self-defense. *Compare, e.g., Mullen v. Glens Falls Insurance Co.,* 73 Cal.App.3d 163, 140 Cal.Rptr. 605 (1977) (dictum). Rather, it is a case where no occasion existed for self-defense. If, but only if, one actually and reasonably believes that he is in imminent danger, he may use such force as appears reasonably necessary to protect himself against the danger. *Brasseaux v. Girouard,* 269 So.2d 590, 599–600 (La.App. 1972) (on rehearing); *cf. State v. Baker,* 103 Idaho 43, 644 P.2d 365 (Ct.App.1982) (discussing similar standard in criminal case). Here, under no reasonable view of the facts can we say that Maxson posed an imminent danger to Sligar in the barroom. Under such circumstances the use of force must be regarded not as a negligent miscalculation of appropriate conduct but as the intentional infliction of harm. *Brasseaux v. Girouard, supra.* We conclude that Sligar's act was intentional within the meaning of the insurance policy exclusion.

## II

■ We next consider whether the insurance company breached its contractual duty to defend Sligar against Maxson's claim. In *Hirst v. St. Paul Fire & Marine Insurance Co.,* 106 Idaho 792, 683 P.2d 440 (Ct.App.1984), we noted a distinction between an insurance company's pecuniary liability upon a claim and its duty to defend the insured. In *Standlee v. St. Paul Fire & Marine Insurance Co.,* 107 Idaho 899, 693 P.2d 1101 (Ct.App., 1984), we applied this distinction to a case presenting the question whether a professional liability insurance carrier should have defended a claim resulting from a sexual assault by a doctor:

> [T]he duty to defend is not coextensive with the duty to pay damages ultimately adjudicated. It is a separate, broader duty. If a complaint alleges facts which, if true, create a *potential* liability within coverage of a liability insurance policy, the insurer has an initial duty to defend the claim. Here, we believe the complaint stated facts sufficient to create an initial question as to whether the doctor's conduct represented malpractice within the professional liability policy. [The insurance company] should have defended the claim until that question was resolved.

ID. at 911, 693 P.2d at 1103. (emphasis in original).

On its surface, the present case invites a similar analysis. Maxson's complaint against Sligar contained two counts, the first in essence alleging an intentional tort but the second alleging that Sligar "negligently struck and beat [him] with his fist...." Such alternative pleading is permitted under modern rules of civil procedure. *See* I.R.C.P. 8(e)(2). The second count of the complaint, alleging an injury caused by negligence, was sufficient to invoke potential liability under Sligar's insurance policy.

However, in this case, unlike *Standlee* and *Hirst,* the insurance company did not heedlessly refuse to defend. As noted earlier, the insurance company sought and obtained a declaratory judgment against the principal insured, Sligar's father, holding that Maxson's injury was not within the scope of the policy. As stated in footnote 1, *supra,* we have not been asked to decide whether the declaratory judgment should have been accorded res judicata effect in this case. However, putting aside the question of res judicata, the underlying

fact remains that the insurance company obtained an adjudication that the subject matter of Maxson's claim fell outside the policy. The company has done what we said in *Standlee* an insurance company should do. It has procured a determination of noncoverage. *Hirst* and *Standlee* do not require, and we decline to hold today, that an insurance company must obtain an adjudication of noncoverage for each insured under the policy. We conclude that the insurance company did not breach its duty to defend.

The summary judgment entered by the district court is affirmed. Costs to respondent, Farmers Insurance. Because genuine issues have been raised on appeal, we decline to award attorney fees under I.C. § 12–121.

WALTERS, C.J., and SWANSTROM, J., concur.