718 P.2d 1167

**Richard RAJSPIC and Grace M. Rajspic, husband and wife, Plaintiffs-Appellants,**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY, Defendant-Respondent.**

**No. 15479.**

Supreme Court of Idaho.

March 13, 1986.

Rehearing Denied May 19, 1986.

David A. Frazier, Coeur d'Alene, for plaintiffs-appellants.

John W. Barrett, of Moffatt, Thomas, Barrett & Blanton, Chartered, Boise, for defendant-respondent.

DONALDSON, Chief Justice.

On November 27, 1973, William Brownson was shot during an altercation with appellant Grace Rajspic. Rajspic was acquitted on a charge of assault with a deadly weapon on the ground of mental disease or defect excluding responsibility.

Later, Brownson brought a civil action against Rajspic for assault and battery to recover damages including punitive damages. (The *Brownson* case). Since the Rajspics had an insurance policy with respondent, Nationwide Mutual Insurance Company (Nationwide), they were defended by counsel employed by Nationwide and their own attorney. During the proceeding, a stipulation was made by the parties that Grace Rajspic was, in the definition of the law, insane at the time of the shooting. The trial court instructed the jury that this stipulation removed the issue of punitive damages from the case. The jury was also instructed that assault and battery were intentional torts and that insanity was not a defense. The jury needed to find Grace Rajspic intended to do the act complained of and not necessarily that she intended to kill or injure Brownson.

After the jury rendered judgment in favor of Brownson for $14,000.00, the Rajspics were informed by Nationwide that their insurance policy did not cover the judgment. The policy had a provision excluding

coverage for injuries caused intentionally by or at the direction of the insured.

The Rajspics sued Nationwide alleging the exclusionary provision was improperly invoked. The trial court granted the Rajspic's motion for partial summary judgment on the issue of liability. The trial court held that Nationwide was collaterally estopped from litigating the issue of insanity based on the verdict in the prior criminal case and the stipulation in the *Brownson* case. This Court reversed the trial court in *Rajspic v. Nationwide Mut. Ins. Co.*, 104 Idaho 662, 662 P.2d 534 (1983) (*Rajspic I*), holding that Nationwide was erroneously denied an opportunity to litigate the insurance coverage issue. This Court declined to apply the doctrine of collateral estoppel to the stipulation in the *Brownson* case and held that Nationwide's motion to exclude evidence of the stipulation should have been granted.

This Court also held that an insane person is capable of committing intentional torts and stated that "in the present case insanity under the law would not be dispositive of whether the act committed by Mrs. Rajspic was an intentional act and therefore within the embrace of the intentional act exclusion. On the record when examined in a light most favorable to the opposing party, it presents a question of fact." *Rajspic I, supra* at 664, 662 P.2d at 536.

Based on this Court's opinion in *Rajspic I*, Nationwide then moved for summary judgment on liability. The trial court granted the motion and held that since the jury in *Brownson* found Grace Rajspic had committed an intentional tort, the Rajspics were collaterally estopped from litigating whether the injuries caused by Mrs. Rajspic's conduct would be covered by the insurance policy.

This Court is once again faced with the issue of whether the doctrine of collateral estoppel was correctly applied by the district court. In this appeal, we must determine whether the jury verdict in the *Brownson* case operates to collaterally estop the Rajspics from litigating the intentional injury exclusion clause of their insurance policy. In order for the doctrine of collateral estoppel to apply, the finding of the jury in *Brownson* that Grace Rajspic committed the intentional torts of assault and battery must necessarily be identical to a finding that she intentionally caused an injury within the meaning of her insurance policy.

Initially, we must address what our opinion in *Rajspic I* did and did not decide. The central issue in that case was whether Nationwide should be precluded from litigating whether Mrs. Rajspic intentionally caused injury within the meaning of the exclusion clause in her insurance policy. We held that they should not, but did not go so far as to hold that the Rajspic's should instead be precluded from litigating that issue. Indeed, we specifically found that "there exists a genuine issue of material fact with respect to the sanity of Mrs. Rajspic. Such issue is particularly relevant to the issue of insurance coverage." *Rajspic I, supra* at 665, 662 P.2d at 537.

Respondent argues that our determination whether collateral estoppel should apply has nothing to do with the fact that Mrs. Rajspic was insane. Rather, respondents assert, we need only consider the finding that Mrs. Rajspic's contact with Brownson constituted an intentional tort and that is sufficient to bar the Rajspics from litigating any issue dealing with Mrs. Rajspic's intent as it relates to her insurance coverage. We disagree. As we stated in *Rajspic I*, Mrs. Rajspic's sanity is particularly relevant in determining whether she was capable of forming a state of mind to have intentionally injured Brownson. In *Rajspic I*, when we cited *McGuire v. Almy*, 297 Mass. 323, 8 N.E.2d 760 (1937), we did *not* thereby adopt a rule that where an insane person is found to have committed an intentional tort, an insurance policy excluding coverage for injuries intentionally caused by the insured will *always* operate to relieve the insurance carrier of liability for the tort judgment. If we had adopted such a rule—which has precedent in no modern jurisdiction—only then would the district court's grant of summary judg-

ment to the respondent have been justified. Rather, we cited *McGuire* to support the general proposition that a person who is considered insane may still be capable of entertaining the intent to commit certain tortious acts even though he entertains that intent as a consequence of his delusion or affliction. *Id.* at 327–29, 8 N.E.2d at 762–63; *Rajspic I, supra* at 664, 662 P.2d at 536. The *McGuire* case had nothing to do with insurance coverage, let alone clauses that excluded coverage for injuries intentionally caused by the insured. *McGuire* was not cited by this Court to insinuate that the treatment of intentional torts and the application of insurance exclusion clauses should be synonymous. They involve two fundamentally different areas of the law, each founded on separate and distinct legal theories and principles.

▆ An insane person may be liable for an intentional tort, yet may still not have intentionally caused an injury within the meaning of the insurance exclusion. In fact, many courts have held that, *as a matter of law*, an insane person *cannot* intentionally cause injury as excluded in insurance policies. *Parkinson v. Farmers Ins. Co.*, 122 Ariz. 343, 594 P.2d 1039 (App. 1979); *Globe American Cas. Co. v. Lyons*, 131 Ariz. 337, 641 P.2d 251, 33 A.L.R.4th 972 (App.1981); *Clemmer v. Hartford Ins. Co.*, 22 Cal.3d 865, 151 Cal.Rptr. 285, 587 P.2d 1098 (1978); *Mangus v. Western Cas. & Sur. Co.*, 41 Colo.App. 217, 585 P.2d 304 (1978); *Rosa v. Liberty Mut. Ins. Co.*, 243 F.Supp. 407 (D.Conn.1965); *George v. Stone*, 260 So.2d 259 (Fla.App.1972); *Arkwright-Boston Mfrs. Mut. Ins. Co. v. Dunkel*, 363 So.2d 190 (Fla.App.1978); *Northland Ins. Co. v. Mautino*, 433 So.2d 1225 (Fla.App.1983); *Aetna Cas. & Sur. Co. v. Dichtl*, 78 Ill.App.3d 970, 34 Ill.Dec. 759, 398 N.E.2d 582 (1979); *Aetna Cas. & Sur. Co. v. Freyer*, 89 Ill.App.3d 617, 44 Ill.Dec. 791, 411 N.E.2d 1157 (1980); *von Dameck v. St. Paul Fire & Marine Ins.*, 361 So.2d 283 (La.App.), *cert. denied*, 362 So.2d 794 (La.1978); *Ruvolo v. American Cas. Co.*, 39 N.J. 490, 189 A.2d 204 (1963); *U.S.F. & G. Ins. Co. v. Brannan*, 22 Wash. App. 341, 589 P.2d 817 (1979). Today, we are not called upon to go so far, but we do recognize that, *as a matter of fact*, an intentional tort and an intentional injury exclusion clause cannot be treated synonymously. We noted in *Rajspic I* that is is possible that an otherwise insane person may have sufficient capacity to understand and contemplate the nature and consequences of her actions. *Rajspic I, supra* at 664, 662 P.2d at 536. It is also possible that the insane person may be completely incapable of understanding the nature and consequences of her actions, depending on the extent of her mental disabilities. Which of these characterizations appropriately applies to Mrs. Rajspic has yet to be determined by a trier of fact.

▆ To hold that a mental defect is irrelevant for purposes of determining whether an act is "intentional" is inconsistent with long-standing principles and policy considerations of insurance law. Exclusionary provisions are to be strictly construed against an insurer. *Miller v. Farmers Insurance Co.*, 108 Idaho 896, 702 P.2d 1356 (1985); *C.H. Leavell & Co. v. Fireman's Fund Insurance Co.*, 372 F.2d 784 (9th Cir.1967); *Globe American Casualty Co. v. Lyons*, 131 Ariz. 337, 339, 641 P.2d 251, 253 (App.1981). Furthermore, "to deny coverage for acts caused by an individual lacking the mental capacity to act rationally is inconsistent with a primary purpose for incorporating intentional act exclusions into insurance policies, *i.e.*, to preclude individuals from benefiting financially when they deliberately cause injury." *Globe American, supra* at 339–40, 641 P.2d at 253–54. An individual who lacks the mental capacity to conform his behavior to acceptable standards will not be deterred by the existence or nonexistence of insurance coverage for injuries that result as a consequence of his acts. *Id.* at 339, 641 P.2d at 253; *Congregation of Rodef Scholom of Marin v. American Motorists Insurance Company*, 91 Cal.App.3d 690, 154 Cal.Rptr. 348 (1979).

In dealing with issues of the intentional conduct of the insured in terms of insur-

ance exclusion clauses, we noted in *Farmers Ins. Group v. Sessions,* 100 Idaho 914, 607 P.2d 422 (1980), that there are three possible interpretations of "intentional:"

"(1) Intentional refers to the volitional act which produces injury. If the insured intentionally did the act, the resulting injury is intentional and not accidental for purposes regarding the policy.

"(2) Intentional refers to the result achieved. Only where the insured intended to inflict the precise injury or degree of injury which in fact resulted should the injury be considered as not accidental.

"(3) Intentional is more demanding than (1) but not so difficult of proof as (2). It refers instead to the volitional performance of an act with an intent to cause injury, although not necessarily the precise injury or severity of damage that in fact occurs." *Id.* at 916–17, 607 P.2d at 424–25; *Home Insurance Company v. Neilsen,* 165 Ind.App. 445, 448, 332 N.E.2d 240, 242 (1975).

■ We completely rejected the first interpretation, above, since it would radically alter the scope of insurance liability. Instead, we held that "We follow the great weight of authority and hold that for this 'intentional torts' exclusion to operate the insurance company must be able to show that its insured acted (whether willfully, intentionally or maliciously) for the purpose of causing injury in the person or property in which it resulted." *Sessions, supra* 100 Idaho at 918, 607 P.2d at 426. We are in agreement with the Oregon Supreme Court which has noted that

"the policy exclusion relates to *injury* caused intentionally. It is not sufficient that the insured's intentional, albeit wrongful, act has resulted in unintended harm; it is the harm itself that must be intended before the exclusion will apply. An act may be so certain to cause a particular kind of harm that it can be said that a person who did such an act intended the harm." *Snyder v. Nelson,* 278 Or. 409, 413, 564 P.2d 681, 683 (1977), (*quoting City of Burns v. Northwestern Mutual Ins. Co.,* 248 Or. 364, 369, 434 P.2d 465, 468 (1967)), (emphasis in original).

Since the focus of the policy exclusion is the injury, the intention must be to inflict the injury actually inflicted and must be directed against the party injured. *Lumberman's Mutual Ins. Co., Mansfield, Ohio v. Blackburn,* 477 P.2d 62, 65 (Okla. 1970).

In *Maxson v. Farmer's Ins. of Idaho,* 107 Idaho 1043, 695 P.2d 428 (Ct.App.1985), the Court of Appeals was faced with the problem that there had been no specific determination that the insured acted for the purpose of causing injury when he hit Maxson. The court held, however, that there was only one reasonable inference that could be drawn from the undisputed facts which was that the insured's purpose in throwing the punch was to cause injury. *Id.* at 1044, 695 P.2d at 429. There was no issue as to the mental disabilities of the insured in *Maxson,* therefore, the inference was well drawn.

■ In the present case, such an inference cannot be drawn from the facts before us. What the jury found in *Brownson* was that Mrs. Rajspic was capable of forming the intent to commit a battery. That intent, the jury was instructed, did *not* mean she had to have formed the specific intent to do injury. Instruction No. 19, the instruction as to Mrs. Rajspic's insanity, read:

"Insanity is not a defense to a civil action for assault and battery, intentionally committed by the insane person, and the intent referred to is the intent to do the act complained of. It is not required that the assailant intend to kill or injure the party attacked. Thus, if you find that Mrs. Rajspic committed a battery against the plaintiff by shooting him intentionally, rather than accidentally, she should not be relieved from liability because she was insane at the time of the shooting and incapable of malice or specific intent to do injury."

This instruction, as we noted in *Rajspic I,* is a correct application of the issue of a

**734**

tortfeasor's sanity when applying it to the elements of the intentional torts of assault and battery. It is *not*, however, a correct application of the issue of an insured's sanity when applying it to an insurance clause that excludes coverage for injuries caused intentionally by the insured. Hence, the two issues are distinct. One has been resolved by a trier of fact, the other has not. By not appealing the former, the Rajspic's have not waived a future fact determination on the latter. Based on the reasoning of *Rajspic I*, therefore, since the issue of Mrs. Rajspic's sanity was not litigated, yet is relevant to the determination of the applicability of the exclusion clause, the Rajspic's cannot be collaterally estopped from litigating that issue. "Whether Mrs. Rajspic's conduct came within the exclusion policy presents an issue of fact." *Rajspic I, supra* at 663, 662 P.2d at 535. We must remand this case once again so that that question of fact may finally be determined. On remand, the determination of Mrs. Rajspic's sanity with respect to the exclusion clause is to be made based on the rule set forth in *Sessions*. Nationwide must be required to establish that despite Mrs. Rajspic's mental condition, she was still capable of forming the intent to cause injury to Brownson.

There has been no trial with respect to Mrs. Rajspic's sanity as it bears upon her insurance coverage. Both sides have attempted to take advantage of prior proceedings that resolved some related issues, but not the critical issue with respect to the exclusion for injuries intentionally caused by the insured. For this reason we must reverse the decision of the district court and remand for further factual proceedings consistent with this opinion.

Costs to the appellant.

No attorney fees on appeal.

BISTLINE and HUNTLEY, JJ., concur.

SHEPARD and BAKES, JJ., dissent without opinion.