ALLIED MUTUAL INSURANCE COM-
PANY and AMCO Insurance Com-
pany, Appellants,

v.

William L. COSTELLO and Costello
Insurance Agency, Inc.,
Appellees.

No. 95–1449.

Supreme Court of Iowa.

Dec. 18, 1996.

Rehearing Denied Jan. 23, 1997.

Robert J. Laubenthal and T.J. Pattermann of Smith Peterson Law Firm, Council Bluffs, for appellants.

Joseph J. Hrvol of Joseph J. Hrvol, P.C., Council Bluffs, for appellees.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, LAVORATO, and ANDREASEN, JJ.

HARRIS, Justice.

This case involves another claim of an "intentional" act under the exclusion provision of a liability insurance policy. The question is whether the insured's mental state deprived him of the ability to intend the assault he perpetrated. The trial court thought yes; we think no.

The plaintiffs Allied Mutual Insurance Co. and AMCO Insurance Co. (Allied) provided employer liability insurance coverage to defendants William L. Costello and his business, Costello Insurance Agency, Inc. The

policies contain an exclusion for "bodily injury intentionally caused or aggravated by you [the insured]."[1]

In March 1994 Costello assaulted Mary Anderson, his secretary, at his business office causing her severe injury. The assault occurred after Costello lost his temper during a dispute with her.

Mary Emily Towne, a witness to the assault, testified that Costello said to Anderson, "You're not going to talk to me like that." Towne said she saw Costello

coming at [Anderson] very aggressively ... quickly and forward. .... Costello then lunged at her and, as he faced her, ... took his left hand and ... grabbed her right shoulder, ... pulled her up, and then had his fist cocked back like that, and punched her in the face.

Anderson then fell to the floor "and then [Costello] got astraddle of her and continued to punch her with his fist." She stated Costello hit Anderson "several times but I don't know how many." Towne further described the assault:

What I saw was [Costello] straddling [Anderson] directly punching her in the face, about the face and head and shoulders and eye—her head was flopping back and forth as he punched her. Her glasses were gone by this point, and I did not see him hit anything else.

Towne also testified that she yelled at Costello to "get off" Anderson. She added: "I don't know that he even heard me."

Anderson testified in her deposition that all she remembers of the actual assault by Costello was "he apparently grabbed the back of me and hit me and knocked me out because I do not remember anything further." Costello told a sheriff who was called that he "lost his temper."

Costello testified in his deposition that he remembered getting angry with Anderson before the assault, and remembered getting out of his chair. He further testified about the assault:

After [getting out of my chair] ... there's about five, seven minutes in there, maybe ten minutes or whatever that I just had completely come unglued. I just lost it. I don't—it's a bad situation, and I was wrong.

Costello also testified that during these five-to-ten minutes "I don't really remember very much."

As a result of the assault Costello was charged with assault with intent to commit serious injury in violation of Iowa Code sections 708.1 and 708.2(1) (1993). He raised diminished responsibility as a defense, and offered the opinions of expert witnesses. These opinions included that of Edward Dale, a clinical psychologist, who described Costello as normally having "appropriate control over himself." Dale stated that for some reason Costello's "control was diminished" on the morning he assaulted Anderson and "he responded in a harmful and hurtful way" towards her. Dale concluded that Costello's assault is not part of a "pattern" he exhibits, but rather was "more of a one time problem." Therapist Jim Rice stated he was "quite concerned about [Costello's] mental state." Rice's diagnosis was that Costello suffered from "dysthymia; adjustment disorder with depressed mood."

Michael Taylor, a psychiatrist retained by the prosecution in the criminal case, stated it was his opinion that, "at the time of the [assault], Mr. Costello was fully capable of understanding the nature and quality of his acts, of understanding the wrongfulness of his acts, and of framing the requisite intent."

---

1. The employer liability insurance policy between Allied and Costello provided:

This employer's liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.
  1. The bodily injury must arise out of and in the course of the injured employee's employment by you.
  2. The employment must be necessary or incidental to your work. ...
  3. Bodily injury by accident must occur during the policy period.

The policy stated the following exclusion:

This insurance does not cover:
  ....
  5. Bodily injury intentionally caused or aggravated by you [the insured].

The term "intentionally caused or aggravated" is not defined in the policy.

Costello was found guilty. Anderson then sued Costello for damages resulting from the assault. When its responsibility to defend Anderson's suit became an issue, Allied brought this declaratory judgment action to resolve the question. After a bench trial the court found Costello did not intend to cause the injuries to Anderson, and hence the exclusion did not apply. The matter is before us on Allied's appeal.

I. Parties to an appeal occasionally dispute whether an action was at law or in equity. The question is important, sometimes even controlling, because the nature of the action determines the scope of our review. Iowa R.App. P. 4 (de novo for equity cases; on error for law cases). In a surprising number of these disputes, the question is clouded, and we have listed signs or indicators that serve as clues. *Ernst v. Johnson County*, 522 N.W.2d 599, 602 (Iowa 1994).

■■■ We are satisfied this action to construe an insurance policy was tried as an equitable action. Even though it was carried on the district court's law calendar, it was a bench trial in which the court reserved rulings. This is some indication of an equitable trial. *Id.* Our review is hence de novo.

■■■ II. Certain well-settled general principles control the construction and interpretation of insurance policies.

Construction of an insurance policy—the process of determining its legal effect—is a question of law for the court. Interpretation—the process of determining the meaning of words used—is also a question of law for the court unless it depends on extrinsic evidence or a choice among reasonable inferences to be drawn.

*A.Y. McDonald Indus. v. Insurance Co. of N. Am.*, 475 N.W.2d 607, 618 (Iowa 1991). If an insurance policy is ambiguous, requires interpretation, or is susceptible of two equally plausible constructions, we adopt the construction that is most favorable to the insured. *West Bend Mut. Ins. Co. v. Iowa Iron Works, Inc.*, 503 N.W.2d 596, 598 (Iowa 1993). This principle of construction is necessary because insurance policies are in the nature of adhesion contracts. *Id.* Thus an insurer has a duty to define any limitations or exclusionary clauses in clear and explicit terms. *Id.* The burden of establishing an exclusion rests upon the insurer. *Id.*

We have interpreted intentional-act exclusion provisions in prior cases. In *AMCO Insurance Co. v. Haht*, 490 N.W.2d 843 (Iowa 1992), we said that Iowa "adhere[s] to the majority view, under which the exclusion is triggered where the insured intended both (1) to do the act which caused the injury, and (2) to cause some kind of bodily injury." *Id.* at 845.

■■■ The intent to cause the injury may be either actual or inferred from the insured's conduct. *Id.; Altena v. United Fire & Cas. Co.*, 422 N.W.2d 485, 488 (Iowa 1988). "Intent may be inferred from the nature of the act and the accompanying reasonable foreseeability of the harm." *AMCO*, 490 N.W.2d at 845. Further, " 'once the intent to cause injury is found, it is immaterial that the actual injury caused is of a different character or magnitude than that intended.' " *Id.* (quoting *Altena*, 422 N.W.2d at 488). The intentional-act exclusion clause in the present case is nearly identical to that in *AMCO* where the exclusion was addressed to "bodily injury . . . intended by the insured." *AMCO*, 490 N.W.2d at 846. Here the policy provides an exclusion for "bodily injury intentionally caused . . . by you [the insured]."

A self-defense claim was urged as the basis for avoiding the intentional-act provision in *McAndrews v. Farm Bureau Mutual Insurance Co.*, 349 N.W.2d 117 (Iowa 1984). We rejected it, finding the self-defense claim did " 'nothing to avoid the inference of intent to harm that necessarily follows the deliberate blow' " inflicted by the insured against the victim. *Id.* at 120 (quoting *Home Ins. Co. v. Neilsen*, 165 Ind.App. 445, 332 N.E.2d 240, 244 (1975)).

In *Altena* we considered whether the insured's intent to injure the victim could be inferred if the injury resulted from sexual abuse. We held the insured's "intent to do the act *and* to cause injury may be inferred by the nature of the act and the accompanying reasonable foreseeability of harm." 422 N.W.2d at 488. We found the insured's intent to act and injure from "the nature of the

acts, their repetition, the force used in carrying them out, and [the victim's] admitted sexual naivete." *Id.* at 490. We said:

> [O]ur own sense of propriety dictates that coverage for these types of criminal acts should be against the public policy of this state. Such a holding is in accord with the general rule that insurance to indemnify an insured against his or her own violation of criminal statutes is against public policy and therefore void.

*Id.*

In *AMCO* we held that an eleven-year-old boy who deliberately threw a baseball at another child, "animated by an obscure playground snit," lacked the capacity to formulate an intent to injure that is possessed by an adult or older child. 490 N.W.2d at 845. We emphasized that the *Altena* holding was unmodified, but that it did not apply in those "special circumstances" that involved the "vague, uncertain meanderings in the mind of an eleven-year-old child involved in a playground spat." *Id.* at 846.

In *American Family Mutual Insurance Co. v. DeGroot*, 543 N.W.2d 870 (Iowa 1996), a thirteen-year-old baby-sitter, after becoming frustrated and angry, hit a five-month-old baby's head on the floor three times with such force that the child died. Expert testimony established the force used was in excess of that which would be received in a forty-five foot fall. *Id.* at 872. We held the repetitious nature of the act supported an inference of an intent to injure. *Id.*

Authorities elsewhere indicate that mental illness may affect the application of an intentional-act exclusion, but disagree as to when that occurs. *See generally* Catherine A. Salton, Comment, *Mental Incapacity and Liability Insurance Exclusionary Clauses: The Affect of Insanity Upon Intent*, 98 Cal.

L.Rev. 1207 (1990); James L. Rigelahaupt, Annotation, *Liability Insurance: Intoxication and Other Mental Incapacity Avoiding Application of Clause in Liability Policy Specifically Exempting Coverage of Injury or Damage Caused Intentionally by or at Discretion of Insured*, 33 A.L.R.4th 983 (1984).

One line of authority takes the view that, if an insured is insane or suffering from mental illness, then the insured's act is not intentional under the intentional-act exclusion. *See, e.g., Globe Am. Cas. Co. v. Lyons*, 131 Ariz. 337, 641 P.2d 251 (App.1981); *Ruvolo v. American Cas. Co.*, 39 N.J. 490, 189 A.2d 204 (1963); *see also* 46 C.J.S. *Insurance* § 945, at 297 (1993) ("An intentional act exclusion does not apply where the insured is insane or mentally deranged at the time of the acts complained of."); 43 Am.Jur.2d *Insurance* § 708, at 764–65 (1982) ("An insane person does not have the mental capacity to form [the intent to act], and the exclusion is not applicable to [that person's] acts."). These cases then diverge into various views of insanity and mental illness. Under what has been called the broad view, some courts apply coverage where the insured suffered from derangement of the intellect that deprived the insured of the capacity to govern conduct in accordance with reason.[2]

In contrast, under what has been called the narrow view, courts have held that injury caused by a mentally ill insured who is incapable of distinguishing right from wrong is still intentional where the insured understands the physical nature of the consequences of the acts and intends to cause injury.[3]

Costello urges us to adopt the holding in *State Farm Fire & Casualty Co. v. Wicka*, 474 N.W.2d 324 (Minn.1991). Under this view an insured's acts are:

**2.** *Lyons*, 641 P.2d at 254; *Congregation of Rodef Sholom v. American Motorists Ins. Co.*, 91 Cal. App.3d 690, 154 Cal.Rptr. 348, 351–52 (1979); *Ruvolo*, 189 A.2d at 208.

**3.** *Prasad v. Allstate Ins. Co.*, 644 So.2d 992, 995 (Fla.1994); *State Auto. Mut. Ins. Co. v. Gross*, 188 Ga.App. 542, 373 S.E.2d 789, 791 (1988); *Rajspic v. Nationwide Mut. Ins. Co.*, 110 Idaho 729, 718 P.2d 1167, 1171–72 (1986); *Shelter Mut. Ins. Co. v. Williams*, 248 Kan. 17, 804 P.2d

1374, 1382–83 (1991); *Colonial Life & Accident Ins. Co. v. Wagner*, 380 S.W.2d 224, 226–27 (Ky. 1964); *Auto–Owners Ins. Co. v. Churchman*, 440 Mich. 560, 489 N.W.2d 431, 435–36 (1992); *Economy Preferred Ins. Co. v. Mass*, 242 Neb. 842, 497 N.W.2d 6, 10 (1993); *Mallin v. Farmers Ins. Exch.*, 108 Nev. 788, 839 P.2d 105, 107 (1992); *Johnson v. Insurance Co. of N. Am.*, 232 Va. 340, 350 S.E.2d 616, 620 (1986); *Public Employees Mut. Ins. v. James F. Fitzgerald*, 65 Wash.App. 307, 828 P.2d 63, 66–68 (1992).

unintentional where, because of mental illness or defect, the insured does not know the nature or wrongfulness of an act, or where, because of mental illness or defect, the insured is deprived of the ability to control his [or her] conduct regardless of any understanding of the nature of the act or its wrongfulness.

*Id.* at 329. A court in Connecticut has also adopted this rule. *Home Ins. Co. v. Aetna Life & Cas. Co.,* 35 Conn.App. 94, 644 A.2d 933, 940 (1994).

Perhaps some future case will provide a basis for us to consider Costello's invitation. The facts here do not support it, unless we are willing to overrule our cases just discussed. This we are unwilling to do.

■■■ III. From the foregoing it seems apparent that Costello intended the injuries resulting from this assault unless he can establish otherwise because the burden of proof on the issue rests squarely on him. On our de novo review of the facts we find he did not carry this burden. We are satisfied that Costello is not mentally ill, only that he experienced difficulty controlling his temper.

Whatever superficial attraction there is to be found in Costello's theory, it is derived from his bizarre behavior. His assault could scarcely be considered rational, but it does not follow that it was unintentional. Costello showed only that his anger was so strong as to prompt him to his conduct. We are however unpersuaded that the anger caused a lack of understanding on his part. His elevated anger seems rather to have elevated his intent.

We conclude and hold that the intentional-act exclusion applies. The judgment of the trial court must be reversed and the case remanded for entry of judgment declaring there was no coverage under the policy for the injury in question.

REVERSED AND REMANDED.